IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERRY L. WALKER,<br>          Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security,<br>          Defendant. | )<br>)<br>)<br>)<br>) 2:15-cv-00900-TFM<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

February --, 2016

**I.    Introduction**

Pending before the court are the Cross-Motions for Summary Judgment filed by Plaintiff, Sherry L. Walker, and Defendant, Carolyn W. Colvin, the Acting Commissioner of Social Security. (ECF Nos. 11, 13). Both parties have filed briefs in support of their respective Motions, (ECF Nos. 12, 14), which, accordingly, are ripe for disposition.

**II.    Background**

Plaintiff was born on December 7, 1966. (R. 146). She is a high school graduate and, before she allegedly became disabled, she worked for 20 years as a certified nurse's aide. (R. 150-151). Plaintiff lives with her husband and her oldest grandson, for whom she is the primary caregiver. She has a history of mental health treatment dating back to at least 2009, when her 18-year-old son died in a tragic accident. In the years following her son's death, she underwent counseling at the recommendation of her employer, who believed she wasn't getting along well with residents, their families, and coworkers at the nursing home. (R. 193). Unable to overcome those issues, she initially stopped working in March 2012. Although she tried to return to work for a couple of weeks in April 2012, she eventually decided that she could no longer perform the

1

demands of her job and quit for good. As she testified, she "was just too exhausted" and "just didn't have the energy to do it." (R. 44). "Physically and mentally too," she said that she "just was totally worn out." (R. 44).

On March 28, 2012, Plaintiff protectively filed for disability insurance benefits, alleging disability as of March 2, 2012, due to depression, anxiety, total exhaustion, and an inability to sleep. (R. 150). On June 8, 2012, Plaintiff underwent a psychological examination at the behest of the state agency with psychologist Susan Houk, Ph.D. (R. 192). At the time, Plaintiff had not undergone any additional mental health treatment since her counseling sessions, at least in part because she lacked insurance. (R. 192). Dr. Houk diagnosed Plaintiff with moderate, recurrent major depressive disorder, bereavement, and generalized anxiety disorder, noting that her prognosis at the time was guarded. (R. 195). Dr. Houk also opined that Plaintiff had moderate difficulty understanding, remembering, and carrying out short, simple instructions; marked difficulty understanding, remembering, and carrying out detailed instructions; and moderate difficulty making judgments on simple work-related decisions. (R. 190). Furthermore, Dr. Houk found that Plaintiff had moderate restrictions in interacting appropriately with the public, supervisors, and co-workers; moderate-to-marked restrictions in responding appropriately to work pressure in a usual work setting; and moderate restrictions in responding appropriately to changes in a routine work setting. (R. 190).

On July 3, 2012, Plaintiff underwent a mental health assessment with Michelle Wygant, MA, NCC, at Community Counseling Center. (R. 233). She described a number of symptoms of depression as well as continued troubling thoughts related to her son's death. (R. 234). Following the examination, it was recommended that she undergo outpatient therapy and medication management on a weekly basis. (R. 234).

On July 6, 2012, Plaintiff established care with Charmaline Batac, M.D., at Primary Health Network – Buhl Farm Community Health Center. (R. 225). At the time, it had been years since she had last seen a doctor, and she was interested in discussing depression medication and getting blood work completed. Plaintiff was diagnosed with depression, for which she was prescribed Fluoxetine, an antidepressant; fatigue, which Dr. Batac determined was "[m]ost likely" attributable to her depression; and obesity, for which she was advised to increase her exercise and watch her diet. (R. 229). She was also told to stop smoking, advised to continue counseling, and referred to a psychiatrist. (R. 229). Two weeks later, Plaintiff returned to Dr. Batac's office for a follow-up, reporting that she had been doing better on medication. (R. 205). She was able to "laugh more" and "see the better side of things," though she still displayed some depressive symptoms. (R. 205). (R. 205).

The next month, Plaintiff was evaluated by Mehmet Ulus, M.D., a psychiatrist at Community Counseling Center. (R. 299). Dr. Ulus found her to be "pleasant, cooperative, [and] adequately and appropriately dressed," and she "sounded alert, oriented, coherent, and relevant." (R. 301). Although she had a depressed mood, she was found "to be animated" with "appropriate affect, and intact memory." (R. 301). Likewise, "[h]er judgment, insight, and motivation for treatment" were "assessed to be quite good." (R. 301). She was diagnosed with major depressive disorder, mood disorder, and possible PTSD and assessed a GAF score of 55. (R. 301).

On March 24, 2013, Plaintiff was admitted to UPMC Horizon Shenango Valley Hospital with complaints of chest pain that radiated down her left arm. (R. 307). A work-up in the emergency room was negative with normal EKG/Troponins. (R. 307). Thereafter, a stress test showed some mild abnormalities. (R. 307). The probability of coronary artery disease was found to be intermediate, while the probability of ischemia was found to be intermediate to high,

though the amount of myocardium at risk was noted to be small. (R. 307). Upon her discharge the following day, Plaintiff was prescribed various medications and instructed to follow-up with her PCP and a cardiologist. (R. 309). When Plaintiff saw her PCP on April 2, 2013, she described her recent hospitalization and noted that she had opted out of having a heart catheterization. (R. 268).

Plaintiff sought a second opinion with cardiologist Michael Burley, M.D., regarding her heart condition on April 11, 2013. (R. 439). Dr. Burley took note of the abnormal stress test results and Plaintiff's risk factors for heart disease, including obesity, tobacco use, hyperlipidemia, and a family history of the disease. (R. 439). He, in turn, advised Plaintiff as to her options: "medical therapy and strict risk factor modification and a period of watchful waiting or moving direct to cardiac catheterization . . . ." (R. 441). After weighing the pros and cons, Plaintiff decided on the latter. (R. 439).

Plaintiff underwent the catheterization on April 17, 2013, and it showed total blockage in a segment of her left anterior descending coronary artery with a significant stenosis of the diagonal. (R. 560). As a result of this finding, Plaintiff was immediately taken to the operating room, where she underwent coronary artery bypass graft surgery with Kouroush C. Ghalili, M.D. (R. 575). Plaintiff was discharged home with home health care on April 23, 2013. (R. 583). During her initial follow-up eight days after her surgery, Plaintiff was reported to be "doing well." (R. 903). Subsequent follow-ups also showed the she was doing well, and on July 8, 2013, she was released from her post-op care with no further activity restrictions. (R. 898, 900).

After Plaintiff's claim was denied at the initial level, she requested a hearing, which was conducted on June 10, 2013, before Administrative Law Judge ("ALJ") John J. Porter. Plaintiff testified at the hearing, as did a vocational expert. The ALJ issued an unfavorable decision to

4

Plaintiff on December 12, 2013. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following exceptions:

> she must be afforded the option to alternate between sitting and standing, changing positions with a maximum frequency of every thirty minutes; she can occasionally perform postural maneuvers; she is limited to simple, routine, repetitive tasks that are not fast-paced, and only simple work decisions; she is limited to incidental collaborations with coworkers and the public, and can collaborate with supervisors thirty minutes per workday, with collaboration defined as actively working together and not simply being in proximity to others; and she must avoid concentrated exposure to pulmonary irritants such as dust, gases, fumes or extreme humidity.

(R. 25). The ALJ's decision became final on May 15, 2015, when the Appeals Council ("AC") denied Plaintiff's request for review. (R. 1-6). This action followed.

### III. Legal Analysis

#### A. Standard of Review

When reviewing the final decision of the Social Security Administration, "[t]his Court neither undertakes a de novo review of the decision, nor does it re-weigh the evidence in the record." *Thomas v. Massanari*, 28 F. App'x 146, 147 (3d Cir. 2002) (citing 42 U.S.C. § 405(g)). Instead, this Court's "review of the Commissioner's final decision is limited to determining whether that decision is supported by substantial evidence." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). If the decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla but less than a preponderance of the evidence. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010). Importantly, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision."

5

*Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009).

B.  Discussion

Plaintiff's primary contention is that this case should be remanded because the record does not contain an opinion from a physician as to whether her physical impairments meet or equal any of the listed impairments. According to Plaintiff, by rendering a decision without a medical opinion on the issue of equivalency, the ALJ ran afoul of Social Security Ruling ("SSR") 96-6p, 1996 WL 374180.

SSR 96-6p was issued "[t]o clarify Social Security Administration policy regarding the consideration of findings of fact by State agency medical and psychological consultants and other program physicians and psychologists by adjudicators at the [ALJ] and [AC] levels." *Id.* at *1. The Ruling recognizes that "[t]he [ALJ] or [AC] is responsible for deciding the ultimate legal question whether a listing is met or equaled." *Id.* at *3. Thus, as SSR 96-6p acknowledges, a state agency medical or psychological consultant's finding as to whether a listing is met or equaled is not binding on an ALJ. *Id.* at *2. At the same time, however, SSR 96-6p notes that "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence . . . must be received into the record as expert opinion evidence and given appropriate weight." *Id.*

The Ruling goes on to clarify that "[t]he signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." *Id.* "Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their

6

findings, may also ensure that this opinion has been obtained at the first two levels of administrative review." *Id.* Accordingly, "the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant." *Id.* However, the ALJ "must obtain an updated medical opinion from a medical expert" when: "in the opinion of the [ALJ]," the evidence of record "suggest[s] that a judgment of equivalence may be reasonable; or [w]hen additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent." *Id.* at *3-4. However, as the plain language of the Ruling makes clear, it is entirely up to the ALJ to determine whether either of these circumstances is present. *See Hardee v. Comm'r of Soc. Sec.*, 188 F. App'x 127, 129 (3d Cir. 2006).

So, in sum, "SSR 96–6p does two different things; it requires record evidence in the form of an expert opinion as the basis for a determination of equivalence in the first instance, and then it identifies two circumstances under which those medical opinions must be updated." *Stratton v. Astrue*, 987 F. Supp. 2d 135, 148 (D.N.H. 2012).

In this case, the requirements of SSR 96-6p were technically met. First, the record contains a Disability Determination and Transmittal form and a Psychiatric Review Technique form, signed by state agency psychologist, Valorie Rings, Psy.D., which shows that a medical opinion was considered at the initial levels of review. (R. 59-70). Second, in accordance with SSR 96-6p, the ALJ received Dr. Rings' opinion into the record and gave it the amount of weight he deemed to be appropriate.

However, as Plaintiff points out, while Dr. Rings considered whether Plaintiff's mental impairments met or equaled any of the listings, no physician ever considered whether any of

Plaintiff's physical impairments did so. There's a reason for that. When Plaintiff applied for benefits, she only raised mental impairments or symptoms stemming therefrom (depression, anxiety, total exhaustion, and inability to sleep) as the basis for her disability claim. The state agency, in turn, only considered whether any of the listings relevant to Plaintiff's mental impairments were met. It was not until the spring of 2013 – on the eve of the administrative hearing – that Plaintiff's coronary artery disease was conclusively diagnosed and she underwent surgery. Sometime thereafter, she submitted a Recent Medical Treatment Form to the SSA, updating the agency as to her recent medical developments. Then, at the hearing, she testified, albeit quite limitedly, about her heart problems, and medical records related to her conditions were admitted into the record by the ALJ.

Faced with the evidence concerning Plaintiff's coronary artery disease and related physical impairments, which was not considered at the state-agency level, was the ALJ required to obtain a new medical opinion on the issue of whether these impairments equaled any of the listings? The answer, in this Court's view, is no. While the applicable regulations permit such a course of action, they do not require it. *See Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 910 n.8 (3d Cir. 2014) (explaining that it "is in the discretion of the ALJ to determine whether medical expert testimony is warranted"); *Hardee*, 188 F. App'x at 129 (quoting 20 C.F.R. § 404.1527(e)(2)(iii)) (explaining that the regulations "permit – but do not require – an ALJ to 'ask for and consider opinions from medical experts on . . . whether [a claimant's impairments] equal the requirements of a listed impairment"); *Horne v. Comm'r of Soc. Sec.*, No. 2:13-CV-00226, 2014 WL 585927, at *6 (W.D. Pa. Feb. 14, 2014) (citing *Cordovi v. Barnhart*, No. 04–3742, 2005 WL 3441222, at *6 (E.D. Pa. Dec.14, 2005); *Oakes v. Barnhart*, 400 F. Supp. 2d 766, 774–78 (E.D. Pa. 2005)) (explaining that "an ALJ is not required to obtain an expert opinion as to

whether an impairment meets or equals a listing and is fully competent to make an equivalency determination"); *see also Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000) (rejecting argument that "only a physician designated by the Commissioner can decide the question of medical equivalency"). The Court does not read SSR 96-6p as creating such a requirement, either. SSR 96-6p simply tells an ALJ what he or she must do with an existing finding by a physician or psychologist "designated by the Commissioner" on the equivalency issue – receive it into the record and treat it like any other medical opinion from a nonexamining source – both of which the ALJ did with Dr. Rings' opinion. It does not, however, impose an affirmative duty on an ALJ to seek out a medical opinion on the equivalency issue. Nor does not it make the absence of a medical opinion as to all of a claimant's impairments at the initial level of review – even those that arise after the state agency's determination – cause for remand in every case. Rather, the decision of whether to obtain a medical opinion is left entirely up to the ALJ.

Even assuming that SSR 96-6p or the regulations do impose such a requirement, the ALJ's "failure" to obtain a medical expert's opinion as to whether Plaintiff's physical impairments equaled any of the listings amounts to harmless error. *See Emery v. Colvin*, No. CIV.A. 14-3373, 2015 WL 4770551, at *8 (E.D. Pa. Aug. 11, 2015) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)) ("The harmless error standard is well-established in our jurisprudence . . . . Remand is not required if the outcome of the case would be the same."). Although Plaintiff had the burden to do so, she has not made any attempt to explain how her coronary artery disease and related physical impairments met or equaled any of the listings or even which listings might have been satisfied. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 n.2 (3d Cir. 2000) (explaining that "the burden is on the claimant to present medical findings that show his or her impairment

matches a listing or is equal in severity to a listed impairment"); *Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 146 (3d Cir. 2007) (finding it significant that the claim did "not argue or even suggest which listing the ALJ should have applied" or "point to any medical evidence ignored by the ALJ that would show that [her] impairments medically equaled one of the listings"). Accordingly, the Court finds that a remand is not warranted on this ground. *See Clanton v. Comm'r of Soc. Sec.*, No. 1:14-CV-1039, 2016 WL 74421, at *8 (W.D. Mich. Jan. 6, 2016) ("Where, as here, the plaintiff was represented at the administrative hearing by an attorney and the plaintiff made no attempt to satisfy [her] burden at step three by presenting both argument and evidence on the issue of equivalence, any error the ALJ may have committed by not obtaining an opinion on the equivalence issue was harmless.").

Plaintiff also argues that the ALJ erred by failing to consider the combined effect of her impairments at step three. To be sure, under the regulations, a "claimant may be disabled due to the effect of her impairments in combination. The ALJ must, therefore, consider the claimant's impairments combined." *Williams v. Barnhart*, 87 F. App'x 240, 242 (3d Cir. 2004) (citing 20 C.F.R. § 404.1523). In this case, the ALJ "explicitly indicated a number of times that he was considering the impairments in combination," and the Court can find "no reason not to believe him." *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008). Indeed, the ALJ performed a thorough analysis of each of the potentially relevant listings and clearly explained why, in his view, none of them were met based on the evidence provided. Moreover, Plaintiff has not offered any valid "reason to conclude that the ALJ should have considered differently or to a greater degree [Plaintiff's] combination of impairments." *Williams*, 87 F. App'x at 242. The ALJ's decision at step three is, thus, sufficient to withstand Plaintiff's request for a remand. *See Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 93 (3d Cir. 2007) (holding

that the ALJ satisfied his burden at step three by "reviewing all of the objective medical evidence . . . and explicitly stating which Listings he was considering").

Finally, Plaintiff takes issue with the ALJ's reliance on Dr. Rings' opinion, since Dr. Rings' reviewed the case file before Plaintiff had been "diagnosed with coronary artery disease and undergone coronary artery bypass surgery." ECF No. 12 at 15. However, as the Third Circuit Court of Appeals has explained,

> because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where "additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical ... consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing," is an update to the report required. SSR 96–6p (July 2, 1996) (emphasis added). The ALJ reached no such conclusion in this case.

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Accordingly, contrary to Plaintiff's argument, the ALJ was entitled to rely on Dr. Rings' opinion. Furthermore, insofar as Plaintiff contends that the ALJ should not have given "little weight" to Dr. Houk's opinion that she "had moderate-to-marked limitations responding appropriately in a usual working setting," (R. 30), she is misguided. The ALJ appropriately considered Dr. Houk's opinion and provided a legally sufficient reason for discounting this portion of it. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)) ("In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another" so long as the ALJ provides "'some reason for discounting the evidence [he] rejects.'").

IV.     **Conclusion**

It is undeniable that Plaintiff has a number of impairments, and this Court is aware of and

sympathetic to the challenges that she faces in acquiring gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Act. The decision of the ALJ will, therefore, be affirmed.

For the reasons hereinabove stated, the Court will **GRANT** the Motion for Summary Judgment filed by the Acting Commissioner and **DENY** the Motion for Summary Judgment filed by Plaintiff. An appropriate Order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERRY L. WALKER,<br>        Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security,<br>        Defendant. | )<br>)<br>)<br>)  2:15-cv-00900-TFM<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

**AND NOW**, this 9th day of February, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the Acting Commissioner's MOTION FOR SUMMARY JUDGMENT (ECF No. 13) is **GRANTED**, and Plaintiff's MOTION FOR SUMMARY JUDGMENT (ECF No. 11) is **DENIED**.

The Clerk shall docket this case **CLOSED**.

BY THE COURT:

s/ Terrence F. McVerry
Senior United States District Judge

cc:    **Joy A. Johnston**
       Email: johnston.law.offices@gmail.com

       **Michael Colville**
       Email: michael.colville@usdoj.gov

       (via CM/ECF)